```
                  UNITED STATES DISTRICT COURT

                  EASTERN DISTRICT OF LOUISIANA


UNITED STATES OF AMERICA                       CRIMINAL ACTION

VERSUS                                         NO. 09-154

STEVEN THOMAS HEBERT                           SECTION "R"
```

## ORDER & REASONS

Before the Court is defendant Steven Hebert's motion to suppress any statements made and any evidence seized in connection with his arrest and the search of his residence on February 13, 2009. Defendant argues that the government violated his *Miranda* rights and used bare bones affidavits that did not support a reasonable belief in the existence of probable cause for his arrest or search for documents in his residence. The Court held an evidentiary hearing on the motion. After consideration of the testimony and other evidence elicited at the hearing, as well as the entirety of the record, the Court finds that the defendant validly waived his *Miranda* rights and that the affidavits in issue provided a sufficient basis for a probable cause determination.

## I.   BACKGROUND

Defendant Steven Hebert was indicted in a six-count superseding indictment for one count of distributing 50 grams or more of cocaine base, in violation of 21 U.S.C. §§ 841(a)(1) and

841(b)(1)(A) (Count 1); two counts of distributing five grams or more of cocaine base, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B) (Counts 2 and 4); one count of possessing with the intent to distribute 500 grams or more of cocaine hydrochloride, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B)(Count 3); one count of being a convicted felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2) (Count 5); and one count of possessing firearms in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1) (Count 6).

On February 11, 2009, Terrebonne Narcotics Task Force ("TNTF") Agent James Scales obtained an arrest warrant for defendant Steven Hebert for distributing crack cocaine.[1] On February 12, 2009, a search warrant was issued for documents relating to drug transactions at Hebert's residence.[2]

On the morning of February 13, 2009, TNTF and DEA agents executed the warrants.  TNTF Agent Russell Madere testified that the agents entered defendant's residence, found the defendant and Shanda Duncan, the defendant's girlfriend, in the back bedroom, and arrested the defendant.  Hebert, Ms. Duncan and her two small children were brought to the front of the residence. Agent Madere testified that he read Hebert his *Miranda* warnings, and when he asked Hebert whether he understood his rights, Hebert

---

[1]   R. Doc. 63-2.

[2]   R. Doc. 63-3.

nodded his head.  Agent Madere testified that at no time did the defendant indicate that he wanted a lawyer or that he did not want to answer questions.

DEA Agent Johnson testified that after securing the perimeter, he entered the residence and found Hebert, Duncan, and two children in the living room.  At that time, the defendant was brought to the back bedroom by Agent Johnson and TNTF Major Darryl Stewart.  Agent Johnson testified that he read the defendant his *Miranda* warnings and that the defendant stated that he understood his rights.  The defendant asked what he was being arrested for, and Agent Johnson informed the defendant that he was the target of a federal investigation for cocaine distribution.  Agent Johnson testified that he told Hebert the possible federal charges he was facing, the possible penalties for those charges, and that it would be in the defendant's best interest to cooperate with the agents.  Agent Johnson also testified that after reading the defendant his rights, at no time did the defendant indicate that he wanted a lawyer or that he did not want to answer questions. Rather, Agent Johnson testified that Hebert asked "what do you want to know?"  In response to questioning, Hebert directed the agents to 20 ounces of cocaine in a backpack, and $2000 in a pair of tennis shoes.

Agent Johnson also testified that upon entering the residence, the agents had observed drugs in plain view and that TNTF Agent Scales had left the residence to obtain a search

warrant for narcotics.  Agent Scales obtained the search warrant and returned to the residence to execute the warrant.  Upon his return, Agent Scales and Agent Johnson continued to question the defendant.  Agent Johnson testified that the defendant was cooperative, and after the agents located ammunition and a .38 revolver, Hebert directed the agents to an additional firearm in the residence.

Agent Johnson then left the residence with the defendant to search a storage unit.  Agent Johnson testified that after searching the storage unit, he received a call from Major Stewart that the agents had found $150,000 inside the walls of defendant's residence.  Agent Johnson testified that when he asked Hebert about the money, Hebert admitted that it was drug proceeds.  Agent Johnson also testified that when he asked Hebert why he had not earlier informed the agents about the money, Hebert told the agents that he did not want to speak to them and made no further statements.

At the hearing, Shanda Duncan, the defendant's girlfriend, testified that when the agents brought the defendant, herself, and her children to the living room, an agent read Hebert his *Miranda* warnings.  She testified, however, that in response, the defendant told one of the agents that "he didn't want to talk and he would like to have a lawyer."

Hebert now moves to suppress any evidence recovered from his residence and any statements made by him after his arrest.

4

Hebert asserts that any post-arrest statements were obtained in violation of his *Miranda* rights. In addition, Hebert contends that the arrest warrant and search warrant for documents were issued in reliance on "bare bones" affidavits that do not support a finding of probable cause.

## II.  DISCUSSION

### (A) Waiver of Miranda Rights

In *Miranda v. Arizona*, the Supreme Court held that before a suspect is subjected to custodial interrogation, law enforcement officers must inform the suspect of his right to remain silent and right to counsel. 384 U.S. 436, 471 (1966). "[T]he prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination." *Id.* at 444. Statements made in violation of these requirements are not admissible in court. *United States v. Ackerman*, 704 F.2d 1344, 1348 (5th Cir. 1983). An express written or oral waiver of the defendant's *Miranda* rights is not necessary to establish a valid waiver, as long as the circumstances demonstrate that the defendant voluntarily waived those rights. *North Carolina v. Butler*, 441 U.S. 369, 373 (1979). But, if a person being interrogated "indicates in any manner, at any time prior to or during questioning, that he wishes to remain silent, the

interrogation must cease." *Miranda*, 384 U.S. at 473-74. The government has the burden of proving, by a preponderance of the evidence, that the defendant voluntarily waived his constitutional right against self-incrimination and that his statements were voluntary. *United States v. Rico*, 51 F.3d 495, 507 (5th Cir. 1995).

Hebert argues that his post-arrest statements must be suppressed because they were obtained after he asserted his *Miranda* rights. Agent Madere and Agent Johnson testified that they both read Hebert his *Miranda* warnings, and that Hebert did not request a lawyer or inform the agents that he did not want to speak to them. Both agents also testified that Hebert indicated that he understood his rights. In addition, Agent Johnson testified that after asking Hebert if he was willing to answer some questions, Hebert asked Agent Johnson "what do you want to know." Defendant's girlfriend, Ms. Duncan, on the other hand, testified that the defendant told an agent that he did not want to talk and that he would like a lawyer. The Court finds the testimony of Agent Madere and Agent Johnson more credible than the testimony of Ms. Duncan. First, the agents testified consistently that Hebert did not request a lawyer or state that he did not want to speak to the agents. Both agents provided credible testimony and their memories were clear as to the events surrounding Hebert's arrest and questioning. In comparison, Ms. Duncan's memory was not clear as to the facts surrounding the

defendant's alleged assertion of his *Miranda* rights.  When asked whom the defendant told that he did not want to talk and wanted a lawyer, Ms. Duncan testified that she could not remember whether the defendant made this statement to the agent who read the defendant his rights or to a different agent.  Second, the Court notes that Ms. Duncan has a motive to testify in defendant's favor, as she is the defendant's girlfriend.  Third, Ms. Duncan's testimony was inconsistent with the statements made in defendant's memorandum in support of his motion to suppress.  In his brief, defendant asserts that he told the officers only that he "had nothing to say" and did not want to talk to them.[3]  He did not state that he asked for a lawyer.  In contrast, Ms. Duncan testified that after Hebert was given his *Miranda* warnings, Hebert told the agents that he did not want to talk *and* that he would like a lawyer.  For these reasons, the Court finds the testimony provided by the agents more credible than the testimony provided by Ms. Duncan.  The Court therefore rejects defendant's argument that the agents questioned him and elicited incriminating statements after he asserted his *Miranda* rights.  The Court concludes that the defendant knowingly waived his *Miranda* rights.

    The Court must also determine whether Hebert's waiver of his *Miranda* rights and subsequent statements were voluntary.  Although there is no "talismanic" definition of voluntariness, a

---

[3]  R. Doc. 54-1 at 7.

statement is voluntary if, "under the totality of the circumstances, the statement is the product of the accused's free and rational choice." *Schneckloth v. Bustamonte*, 412 U.S. 218, 224 (1973); *United States v. Restrepo*, 994 F.2d 173, 183 (5th Cir. 1993) (quoting *United States v. Rogers*, 906 F.2d 189, 190 (5th Cir. 1990)).  In the Fifth Circuit, to find the defendant's statement voluntary, the court "must conclude that [the defendant] made an independent and informed choice of his own free will, possessing the capability to do so, his will not being overborne by the pressures and circumstances swirling around him." *Welch v. Butler*, 835 F.2d 92, 95 (5th Cir. 1988).  The court must assess the characteristics of the defendant and the details of the interrogation, such as the youth of the defendant, his level of education, his level of intelligence, the lack of any advice to the defendant of his constitutional rights, the length of detention, the repeated and prolonged nature of the questioning, and the use of physical punishment, such as deprivation of food or sleep.  *Schneckloth*, 412 U.S. at 226.

In this case, there is no evidence that Hebert's level of intelligence or education was significantly low, or that he had any mental health problems.  There is also no evidence that Hebert's detention was lengthy or the questioning prolonged or that any physical coercion was used against him.  Hebert was twice advised of his right to remain silent and his right to an attorney before he gave the statements, and twice indicated that

he understood his rights.  He was not subject to intimidation or threats.  Although Hebert argues that an officer emphasized the need to cooperate to "help himself," an officer's advising a defendant of his interest in cooperating does not render the defendant's waiver involuntary.  *See United States v. Ornelas-Rodriguez*, 12 F.3d 1339, 1348 (5th Cir. 1994) (advising accused that there are advantages to cooperating did not render confession involuntary).

On these facts, the Court finds that Hebert knowingly and voluntarily waived his *Miranda* rights, making an independent and informed choice of his own free will to give a statement and possessing the capability to do so.  Thus, his statements will not be suppressed and are admissible at trial.

### (B) Good Faith Exception

A motion to suppress evidence discovered pursuant to a warrant is analyzed under a two-step process.  *United States v. Sibley*, 448 F.3d 754, 757 (5th Cir. 2006) (citation omitted).  First, the Fifth Circuit requires the court to decide whether the good faith exception to the exclusionary rule applies.  *Id.*  "The good-faith exception provides that where probable cause for a search warrant is founded on incorrect information, but the officer's reliance upon the information's truth was objectively reasonable, the evidence obtained from the search will not be excluded."  *Id.* (quoting *United States v. Cavazos*, 288 F.3d 706,

709 (5th Cir. 2002)). The good faith exception does not apply when:

> (1) the magistrate issuing the warrant was misled by information in an affidavit that the affiant knew or should have known was false; (2) the issuing magistrate abandoned the judicial role; (3) the warrant was based on an affidavit so lacking in indicia of probable cause as to render belief in its existence entirely unreasonable; or (4) the warrant was so facially deficient that the executing officers could not have reasonably presumed it to be valid.

*Sibley*, 448 F.3d at 757. If the good faith exception does not apply, the court must proceed to the second step of the analysis and ensure that the magistrate issuing the warrant had a substantial basis to conclude that there was probable cause to support the warrant. *Id.* at 757-58. The government bears the burden of demonstrating that the good faith exception is applicable. *United States v. Gant*, 759 F.2d 484, 487 (5th Cir. 1985).

In an earlier order, the Court rejected Hebert's arguments that (1) the issuing magistrate was misled by information in the affidavit supporting the search warrant for documents and that Agent Scales, the affiant, knew or should have known the information was false; and (2) the arrest warrant was not issued by a neutral magistrate. There is no evidence to suggest that Agent Scales knowingly or with reckless disregard for the truth included false information in his affidavit applying for the search warrant for documents. In addition, there is no evidence that the magistrate judge did not act as a neutral and detached

10

magistrate in authorizing the arrest warrant.

Defendant's remaining argument is that the good faith exception does not apply because the search warrant and the arrest warrant were based on "bare bones" affidavits so lacking indicia of probable cause as to render belief in its existence unreasonable.  "Bare bones" affidavits are those containing wholly conclusory statements and lack the facts and circumstances from which a judge could make an independent determination of probable cause.  *United States v. Satterwhite*, 980 F.2d 317, 321 (5th Cir. 1992).  Examples of "bare bones" affidavits include those that merely state that the affiant "has cause to suspect and does believe" or "has received reliable information from a credible person and do[es] believe" that contraband is located on the premises.  *United States v. Brown*, 941 F.2d 1300, 1303 n.1 (5th Cir. 1991).  In determining whether the supporting affidavit bore indicia of probable cause, the Court should construe the affidavit "in a common sense and realistic manner, with conclusions based upon the laminated total of available facts." *United States v. Craig*, 861 F.2d 818, 821 (5th Cir. 1988) (internal citations and quotation marks omitted).

Defendant argues that there is no indication that the affiant, Agent Scales, had any personal knowledge of Hebert's involvement in drug trafficking activities.  But, "[a]n affidavit may rely on hearsay information not within the personal knowledge of the affiant ... as long as the affidavit presents a

11

substantial basis for crediting the hearsay." *United States v. Laury*, 985 F.2d 1293, 1312 (5th Cir. 1993) (citations and internal quotation marks omitted). When one officer has personally observed the evidence and then passed that information to the affiant, there is a substantial basis to credit the hearsay. *See United States v. Melancon*, 462 F.2d 82, 91 (5th Cir. 1972) ("We see no reason to discredit information passed from one law enforcement official to another before being offered to a magistrate as grounds for probable cause ... [and] where the hearsay evidence has been personally observed by federal officers and communicated directly to this affiant, this may constitute a substantial basis for crediting the hearsay."). In this case, the affidavit provides that TNTF agents participated in the purchase of crack cocaine from Hebert.[4] That the affidavit does not specify whether TNTF Agent Scales personally participated in the drug transaction or whether another TNTF agent participated in the transaction and then passed the information to Agent Scales does not make the affidavit "bare bones." The affidavit details a specific transaction in which TNTF agents, along with an informant, purchased 29.13 grams of suspected crack cocaine from the defendant at a specific location.[5] The Court finds that the affidavit is not conclusory in nature but presents specific facts regarding the defendant's involvement in drug trafficking

---

[4] R. Doc. 63-2.

[5] R. Doc. 63-2.

from which a judge could make an independent determination of probable cause.

The Court also finds that the affidavit supporting the search warrant for documents was not a "bare bones" affidavit. To determine whether an affidavit has sufficient indicia of probable cause to search a residence, the court must determine if the affidavit "established a nexus between the house to be searched and the evidence sought." *United States v. Nguyen*, 172 F. App'x 558, 561 (5th Cir. 2006) (citation omitted). The requisite "nexus may be established by direct observation or through normal inferences as to where the articles sought would be located." *Id.* Here, the affidavit states that on two occasions, Hebert initiated drug transactions from the property sought to be searched, and that both transactions were completed inside the residence.[6] Further, the affidavit provides that based on Agent Scales' training and experience, individuals involved in distributing illegal narcotics will keep documentation related to the transactions in secure locations, secreted from law enforcement.[7] Thus, the affidavit in this case established a nexus between the defendant's residence and documents related to illegal drug activity. *See Laury*, 985 F.2d at 1314 (agent's statement that "based on his training, experience, and participation in the investigation of over 200

---

[6]  R. Doc. 63-3.

[7]  *Id.*

13

bank robberies, 'individuals who commit bank robberies tend to keep evidence and instrumentalities of their robberies in their personal possession, as well as their homes'" was sufficient to establish a nexus between the defendant's home and the instrumentalities and evidence of the robbery).

The Court finds that the challenged affidavits are not "bare bones" affidavits.  The facts set forth in the arrest warrant and search warrant affidavits are not so insufficient as to preclude a law enforcement officer's "objectively reasonable reliance" upon the judges' probable cause determinations.  Accordingly, the good faith exception applies and evidence recovered as a result of the search, and statements made after defendant's arrest will not be excluded.

### III. CONCLUSION

For the foregoing reasons, the Court DENIES defendant's motion to suppress.

New Orleans, Louisiana this __18th__ day of March, 2011.

_____
SARAH S. VANCE

UNITED STATES DISTRICT JUDGE