UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

UNITED STATES OF AMERICA

VERSUS

STEVEN HEBERT

CRIMINAL ACTION

NO: 09-154

SECTION: R

## ORDER & REASONS

Before the Court is Steven Hebert's motion for post-conviction relief pursuant to 28 U.S.C. § 2255.  Upon review of the entire record, the Court has determined that the petitioner has demonstrated his entitlement to an evidentiary hearing in order to determine whether ineffective assistance of counsel rendered his guilty plea involuntary.  The Court therefore GRANTS petitioner's request for an evidentiary hearing as to that issue only.

## I.   BACKGROUND

On February 18, 2010, the government filed a superseding indictment charging Hebert with (1) one count of knowingly and intentionally distributing 50 grams or more of cocaine base, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A), (2) one count of knowingly and intentionally distributing five grams or more of cocaine base, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B), (3) one count of knowingly and intentionally possessing with the intent to distribute 500 grams or more of cocaine hydrochloride, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B), (4) one count of knowingly and intentionally

possessing with the intent to distribute five grams or more of cocaine base, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B), (5) one count of knowingly possessing two firearms after having been previously convicted of felony offenses in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2), and (6) one count of knowingly possessing two firearms in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1).[1] The Government also filed a bill of information to establish that Hebert had four earlier felony drug convictions.[2]

On the morning that his trial was to begin, Hebert entered into a plea agreement with the Government under Federal Rule of Criminal Procedure 11(c)(1)(C), in which he agreed to plead guilty to counts 3, 4, and 5 of the indictment.[3] Under the plea agreement, the Government and Hebert agreed that a specific range of not less than 15 years imprisonment and maximum of life imprisonment was the appropriate disposition of the case given the violations of federal law and the defendant's past criminal conduct.[4] Further, under the plea agreement, the Government agreed to move to dismiss counts 1, 2, and 6 of the indictment at the time of sentencing.[5] In exchange, and in addition to his

---

[1] R. Doc. 30.

[2] R. Doc. 91.

[3] R. Doc. 95.

[4] *Id.*

[5] *Id.*

guilty plea, Hebert waived his right to appeal his conviction or sentence, except that he reserved the right to bring a direct appeal of any sentence above the statutory maximum.[6] Hebert also waived his right to contest his conviction or sentence in any collateral proceeding, including a proceeding under 28 U.S.C. 2255, except by establishing that ineffective assistance of counsel directly affected the validity of his waiver of appeal and collateral challenge rights or the validity of the guilty plea itself.[7]

On June 6, 2011, Hebert pleaded guilty to the bill of information establishing his prior felony drug convictions and to counts 3, 4, and 5 of the superseding indictment.[8] Following his guilty plea, Hebert wrote two letters to the Court asking to withdraw his plea due to his alleged misunderstanding of the terms of the agreement.[9] In the second letter, Hebert indicated that he understood that he was facing a statutory range of 10 years to life imprisonment and suggested that his attorney "had me plea [sic] to something that is much greater than I should otherwise recieve [sic]."[10] After speaking to his attorney and his mother about the terms of the agreement, Hebert wrote a third

---

[6] *Id.*

[7] *Id.*

[8] R. Doc. 103.

[9] R. Docs. 96; 99.

[10] R. Doc. 99 at 1.

letter asking the Court to disregard his previous two letters and expressing his desire to maintain his guilty plea.[11]

At his sentencing on September 21, 2011, the Court accepted the plea agreement and sentenced Hebert to 292 months as to count 3, 292 months as to count 4 and 100 months as to count 5, all to run concurrently.[12] The Court then granted the Government's motion to dismiss the remaining counts of the indictment.[13] Hebert, currently incarcerated at the United States Penitentiary in Oakland, Louisiana, now moves to vacate, set aside or correct his sentence under 28 U.S.C. § 2255.[14] Hebert claims that he was denied effective assistance of counsel due to his attorney's false assurances that he was pleading to a specific term of 15 years imprisonment. He also asserts without argument that his counsel was ineffective because he "allowed Herbert [sic] to plead to a sentencing range that did not apply to him, and did not attempt to contest the categorization of him as a [sic] Armed Career Criminal or Career Offender."[15] Additionally, in his reply to the Government's opposition memorandum, Hebert argues that his attorney failed to "strongly" object to the Government's refusal to request that Hebert receive the third point of a

---

[11] R. Doc. 100 at 1.

[12] R. Doc. 116 at 22-23.

[13] *Id.* at 24.

[14] R. Doc. 125.

[15] *Id.* at 2.

possible three-point reduction in his offense level for timely acceptance of responsibility.[16]  Finally, in addition to his ineffective assistance claim, Hebert argues that his sentence should be corrected pursuant to the Fair Sentencing Act of 2010.[17]

## II.  LEGAL STANDARDS

### A. Overview of 28 U.S.C. § 2255

Section 2255 of Title 28 of the United States Code provides that a federal prisoner serving a court-imposed sentence "may move the court which imposed the sentence to vacate, set aside or correct the sentence."  28 U.S.C. § 2255(a).  Only a narrow set of claims are cognizable on a section 2255 motion.  The statute identifies four bases on which a motion may be made: (1) the sentence was imposed in violation of the Constitution or laws of the United States; (2) the court was without jurisdiction to impose the sentence; (3) the sentence exceeds the statutory maximum sentence; or (4) the sentence is "otherwise subject to collateral attack."  *Id.*  A claim of error that is neither constitutional nor jurisdictional is not cognizable in a section 2255 proceeding unless the error constitutes "a fundamental defect which inherently results in a complete miscarriage of justice."  *United States v. Addonizio*, 442 U.S. 178, 185 (1979) (quoting *Hill v. United States*, 368 U.S. 424, 428 (1962)).

---

[16] R. Doc. 125; 130.

[17] Id.

When a section 2255 motion is filed, the district court must first conduct a preliminary review.  "If it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief, the judge must dismiss the motion." *Rules Governing Section 2255 Proceedings,* Rule 4(b).  If the motion raises a non-frivolous claim to relief, the court must order the government to file a response or to take other appropriate action.  *Id.*  The Court may then order the parties to expand the record as necessary and, if good cause is shown, authorize limited discovery.  *Rules Governing Section 2255 Proceedings,* Rules 6-7.

After reviewing the government's answer, any transcripts and records of prior proceedings, and any supplementary materials submitted by the parties, the court must determine whether an evidentiary hearing is warranted.  *Rules Governing Section 2255 Proceedings*, Rule 8.  The Court must hold an evidentiary hearing unless "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b).  No evidentiary hearing is required, however, if the prisoner fails to produce any "independent indicia of the likely merit of [his] allegations." *United States v. Edwards*, 442 F.3d 258, 264 (5th Cir. 2006) (quoting *United States v. Cervantes*, 132 F.3d 1106, 1110 (5th Cir. 1998)).

Ultimately, the petitioner bears the burden of establishing his claims of error by a preponderance of the evidence. *Wright*

6

*v. United States*, 624 F.2d 557, 558 (5th Cir. 1980). For certain "structural" errors, relief follows automatically once the error is proved. *Brecht v. Abrahamson*, 507 U.S. 619, 629-30 (1993). For other "trial" errors, the court may grant relief only if the error "had substantial and injurious effect or influence" in determining the outcome of the case. *Id.* at 637-38; *see also United States v. Chavez*, 193 F.3d 375, 379 (5th Cir. 1999) (applying *Brecht's* harmless error standard in a section 2255 proceeding). If the court finds that the prisoner is entitled to relief, it "shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate." 28 U.S.C. § 2255(b).

**B. Ineffective Assistance of Counsel**

To establish a claim of constitutionally ineffective assistance of counsel, petitioner must show both (1) that counsel's performance fell below an objective standard of reasonableness, and (2) that but for counsel's deficient performance, the likely outcome of the proceeding would have been different. *See Strickland v. Washington*, 466 U.S. 668, 687-96 (1984). Petitioner must meet both prongs of the *Strickland* test and, if the Court finds that petitioner has made an insufficient showing as to either prong, the Court may dispose of the claim without addressing the other prong. *See id.* at 697.

As to the first prong of the *Strickland* test, counsel's performance must be compared to "an objective standard of reasonableness, mindful of the strong presumption of adequacy." *Green v. Johnson*, 116 F.3d 1115, 1122 (5th Cir. 1997). A court should not find inadequate representation merely because, with the benefit of hindsight, the court disagrees with counsel's strategic choices. *Id.* The Fifth Circuit has made clear that "[a] conscious and informed decision on trial tactics and strategy cannot be the basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness." *Id.* (quoting *Garland v. Maggio*, 717 F.2d 199, 206 (5th Cir. 1983) (on rehearing)).

As for the second *Strickland* prong, a petitioner must show

> that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.

*Strickland*, 466 U.S. at 694.

In *Hill v. Lockhart*, 474 U.S. 52 (1985), the Supreme Court applied the *Strickland* test to cases involving guilty pleas. In the context of a guilty plea, a petitioner must prove not only that his attorney actually erred, but also that he would not have pleaded guilty but for the error. *See Armstead v. Scott*, 37 F.3d 202, 206 (5th Cir. 1994). Under the first prong of the *Strickland* test, if a defendant is represented by counsel during the plea process and enters his plea upon the advice of counsel, "the

8

voluntariness of the plea depends on whether counsel's advice was within the range of competence demanded of attorneys in criminal cases." *Hill*, 474 U.S. at 56 (internal quotations omitted). To meet the prejudice prong, a petitioner must establish that but for his counsel's allegedly erroneous advice, he would not have pleaded guilty but would have insisted on going to trial. *Id.* at 59; *see also Armstead*, 37 F.3d at 206 (citing *Carter v. Collins*, 918 F.2d 1198, 1200 (5th Cir. 1990)).

**III. DISCUSSION**

**A. Timeliness**

Section 2255(f) provides as follows:

A 1-year period of limitation shall apply to a motion under this section. The limitation period shall run from the latest of—
(1) the date on which the judgment of conviction becomes final;
(2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;
(3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
(4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2255(f). Because Hebert appealed his conviction, the judgment of conviction did not become final until November 19, 2013, when his time expired for filing a petition for certiorari contesting the Fifth Circuit's affirmation of the conviction. *See*

*Clay v. United States*, 537 U.S. 522, 525 (2003).[18] The Court received Hebert's motion for relief on August 9, 2013, while the appeal was still pending. The petition is therefore timely.

**B. Ineffective Assistance of Counsel**

Hebert argues that ineffective assistance of counsel affected the validity of his guilty plea because (1) his attorney falsely promised that he was pleading to a specific term of imprisonment of 15 years; (2) his attorney "allowed [him] to plead to a sentencing range that did not apply to him;" and (3) his attorney failed to object to his classification as an armed career offender under 18 U.S.C. § 924(e) and as a career offender under the Sentencing Guidelines, as well as to the Government's refusal to request a further reduction in his offense level for timely acceptance of responsibility.

With the exception of Hebert's claim that counsel promised him a 15-year sentence, his contentions are without merit. Hebert pleaded guilty to the bill of information alleging that he had been convicted of four previous felony drug convictions. Based on those convictions, he faced a minimum sentence of 10 years in prison and a maximum sentence of life imprisonment on Counts 3 and 4 of the indictment. *See* 21 U.S.C. § 841(b)(1)(B).[19]   In the

---

[18] The Fifth Circuit issued its judgment dismissing Hebert's appeal as frivolous on August 21, 2013.  R. Doc. 123.

[19] As explained below, even if Hebert were to be re-sentenced under the Fair Sentencing Act, he would still face a statutory sentencing range of 10 years to life in prison based on his conviction for possession with intent to distribute 500 grams or more of cocaine hydrochloride.

10

plea agreement, Hebert and the Government agreed that a sentence of 15 years to life was appropriate.   Accordingly, Hebert's counsel did not induce him to plead to a sentencing range that did not apply to him.

Also without merit is Hebert's assertion that his attorney failed to object to various classifications in the pre-sentencing investigation report ("PSR"). Hebert's attorney presented 20 objections to the PSR.[20] Among those, he objected to Hebert's potential classification as an armed career offender under 18 U.S.C. § 924(e).[21] The Court did not consider that provision in sentencing Hebert and therefore declined to rule on the objection.[22] Counsel also objected to the Government's refusal to move for a third point further reducing Hebert's offense level for timely acceptance of responsibility.[23] The Judge overruled this objection because the defendant pleaded guilty one day before trial was scheduled to begin, which did not constitute timely acceptance of responsibility.[24] Finally, counsel objected to Hebert's classification as a career offender under the

---

[20] R. Doc. 104 at 26-32.

[21] *Id.* at 26-27.

[22] R. Doc. 116 at 8.

[23] R. Doc. 104 at 28.

[24] R. Doc. 116 at 5-6.

Sentencing Guidelines.[25] The Court overruled the objection, finding that Hebert had failed to carry his burden in objecting to the classification.[26]

Hebert's final basis for claiming ineffective assistance of counsel presents a more difficult question. He alleges that his attorney, George Chaney, misunderstood the terms of the plea agreement and falsely promised him that the agreement guaranteed a specific term of 15 years imprisonment. Hebert requests an evidentiary hearing.

"[W]hen a defendant pleads guilty on the basis of a promise by his defense attorney or the prosecutor, whether or not such promise is fulfillable, breach of that promise taints the voluntariness of his plea." *Montoya v. Johnson,* 226 F.3d 399, 405 (5th Cir. 2000) (quoting *McKenzie v. Wainwright,* 632 F.2d 649, 651 (5th Cir. 1980)). "Significantly, a guilty plea is not rendered involuntary simply because a defendant misunderstood his defense counsel's inaccurate prediction that a lesser sentence would be imposed." *United States v. Lewis,* CRIM.A. 07-428, 2012 WL 368712, at *5 (E.D. La. Feb. 3, 2012). Rather, "[a]s long as the defendant understood the term of imprisonment to which he might possibly be sentenced, he was aware of the plea's consequences." *United States v. Fernandez,* 317 Fed. App'x 388 (5th Cir. 2009) (citations omitted).

---

[25] R. Doc. 104 at 29.

[26] R. Doc. 116 at 4-5.

A defendant ordinarily will not be heard to refute his testimony given at a plea hearing while under oath. *Cervantes*, 132 F.3d at 1110 (citing *United States v. Fuller*, 769 F.2d 1095, 1099 (5th Cir. 1985)). "Solemn declarations in open court carry a strong presumption of verity, forming a formidable barrier in any subsequent collateral proceedings." *Id.* (internal quotation marks omitted) (quoting *Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977)). Further, written plea agreements are "entitled to a presumption of regularity and are accorded great evidentiary weight." *United States v. Soliz*, 359 F. App'x 466, 470 (5th Cir. 2009) (per curiam) (unpublished) (quoting *Hobbs v. Blackburn*, 752 F.2d 1079, 1081 (5th Cir. 1985)). Nevertheless, a defendant may demonstrate entitlement to habeas relief on the basis of his attorney's alleged promises, though inconsistent with his representations in open court when entering his guilty plea, by proving: (1) the exact terms of the alleged promise; (2) exactly when, where, and by whom such promise was made; and (3) the precise identity of any eyewitness to the promise. *Cervantes*, 132 F.3d at 1110; *Smith v. Blackburn,* 785 F.2d 545, 548 (5th Cir. 1986); *Hayes v. Maggio,* 699 F.2d 198, 203 (5th Cir. 1983).

A habeas petitioner may not establish the existence of a promise on his uncorroborated testimony alone, but "[i]f the defendant produces independent indicia of the likely merit of [his] allegations, typically in the form of one or more

affidavits from reliable third parties, [he] is entitled to an evidentiary hearing on the issue. *Cervantes*, 132 F.3d at 1110. A court should hold a hearing and make findings of fact "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." *Soliz*, 359 F. App'x at 470 (quoting § 2255(b)). "If, however, the defendant's showing is inconsistent with the bulk of [his] conduct or otherwise fails to meet [his] burden of proof in the light of other evidence in the record, an evidentiary hearing is unnecessary." *Cervantes*, 132 F.3d at 1110.

The written plea agreement, signed by Hebert and his attorney, indicated that Hebert faced a minimum of 10 years imprisonment and a maximum of life imprisonment for Counts 3 and 4. It further indicated that Hebert faced a maximum of 10 years imprisonment for Count 5 unless the Court determined that Hebert was an armed career offender, in which case he would be subject to a minimum of 15 years imprisonment and a maximum of life imprisonment on that count. Immediately following this description of the charges and the associated sentences, the agreement read:

> However, the Government and the defendant agree, Pursuant to Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure, that a **specific sentencing range of not less than 15 years imprisonment and a maximum of life imprisonment is appropriate in the disposition of this case.** Both parties agree that this sentence is reasonable when considering the

14

violations of federal law as well as the defendant's past criminal conduct.[27]

Further, the written plea agreement provided that

> [t]he defendant understands that any discussions with defendant's attorney or anyone else regarding sentencing guidelines are merely rough estimates and the Court is not bound by those discussions . . . . The defendant understands the Court could impose the maximum term of imprisonment and fine allowed by law, including the imposition of supervised release.[28]

Hebert pleaded guilty on June 6, 2011, the morning that his trial was to begin. The transcript of defendant's plea proceedings reflects that the Court specifically advised defendant that he faced a maximum sentence of life imprisonment.[29] The Court explained that it would consult the Sentencing Guidelines in sentencing Hebert and advised him of their effect:

| | |
|---|---|
| The Court: | Do you understand that the sentence I impose may be different from any estimate your lawyer gave you? |
| Hebert: | Yes, ma'am. |
| The Court: | Do you understand that after I determine what guideline range is recommended to you, I may impose a sentence that's more severe or less severe if I determine that the guidelines do not take into account all of the relevant facts? |
| Hebert: | Yes, ma'am. |

---

[27] R. Doc. 95 at 1-2 (emphasis in original).

[28] *Id.* at 3.

[29] R. Doc. 103 at 4, 6-7.

15

. . .

| | |
|---|---|
| The Court: | Do you understand that I could impose the maximum sentence I described to you this morning? |
| Hebert: | Yes, ma'am.[30] |

Turning to the subject of the plea agreement, the Court first asked Hebert whether he had read and signed the agreement and whether he had discussed it with his lawyer and understood its terms and conditions. Hebert responded affirmatively.[31] The Court continued:

| | |
|---|---|
| The Court: | Are there any agreements between you and the government concerning your plea other than what's in that agreement? |
| Hebert: | No, ma'am. |
| The Court: | Have you been persuaded to plead guilty because of any promises that are not in that agreement? |
| Hebert: | No, ma'am.[32] |

At the Court's request, the Government advised the Court of the terms of the plea agreement:

| | |
|---|---|
| AUSA Kevin Boitmann: | The agreement is set forth in the 5-page document to the Court pursuant to Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure in which the government and the defendant are agreeing a specific |

---

[30] *Id.* at 9.

[31] *Id.* at 14.

[32] *Id.*

16

sentencing range of not less than
15 years imprisonment and a maximum
of life imprisonment is appropriate
in the disposition of this case.[33]

Both Hebert and his attorney agreed that the terms of the
plea agreement were as described by the AUSA:

> The Court:     Mr. Chaney, is your understanding of the plea
>                agreement the same as Mr. Boitmann --
>
> Chaney:        It is, Your Honor.
>
> The Court:     – represented to me? Mr. Hebert, do you
>                understand the plea agreement to be what the
>                lawyers represented to me?
>
> Hebert:        Yes, ma'am.[34]

In indicating that the Court was not bound to accept the
agreement, the Court once again mentioned its terms to the
defendant:

> The Court:     Do you understand *that although the
>                government has agreed that a specific
>                sentencing range of not less than 15 years
>                imprisonment and a maximum of life
>                imprisonment is appropriate in this case* that
>                I'm not bound to accept that agreement?
>
> Hebert:        Yes, ma'am.[35]

Contrary to his current assertions, Hebert represented to
the Court that no one had told him what sentence he would
receive:

---

[33] *Id.* at 15.

[34] *Id.*

[35] *Id.* at 15-16 (emphasis added).

17

```
The Court:       Has anyone, including your lawyer, told you
                 what sentence I will impose other than to
                 explain the mandatory minimums that apply in
                 this case?

Hebert:          No, ma'am.[36]
```

Likewise, Hebert's attorney denied having informed Hebert that he would receive a particular sentence:

```
The Court:       Have you made any representations to [Hebert]
                 as to what sentence I will impose other than
                 to explain to him that the Court will consult
                 the guidelines on an advisory basis and would
                 be bound to apply any applicable mandatory
                 minimum sentence?

Chaney:          No, Your Honor.[37]
```

Hebert's sworn statements, the statements of his attorney, and the plain language of the agreement strongly suggest that Hebert understood his plea agreement to provide for a range of not less than 180 months and a maximum of life imprisonment. He now claims otherwise, however, alleging that his attorney assured him that the Government had agreed to a sentence of precisely 15 years. In Hebert's memorandum, he claims to have "questioned the language of the plea agreement," at which time his attorney allegedly stated:

```
Don't worry about it. You will get 15 years upon agreement
between the Government and myself. That's what this plea is
for.[38]
```

---

[36] *Id.* at 19.

[37] *Id.* at 20.

[38] R. Doc. 125-1 at 4.

18

Hebert did not include this allegation in his accompanying declaration, but the statement, made under penalty of perjury, does allege the following:

1) that the weekend before his trial, Hebert turned down a Rule 11(c)(1)(C) agreement providing for a sentence of 240 months;

2) that his mother, Shula Ingram, informed him that Chaney had called her about a "better offer than the 240-month agreement;"

3) that Ingram and Hebert's girlfriend, Shanda Duncan, visited him on the morning of his scheduled trial date, and that they told Hebert that Chaney had urged them to convince Hebert to take the "better" plea agreement for 180 months. Ingram and Davis indicated to Hebert that Chaney had informed them that Hebert could receive no more than 15 months if the judge accepted the agreement;

4) that Chaney informed Hebert that the offer was to a specific term of imprisonment of 15 years when Hebert indicated that he did not know how much time 180 months was; and

5) that Hebert never would have accepted the agreement if he had known that he would be exposed to more than 15 years imprisonment, and that he explained this to Chaney.[39]

---

[39] R. Doc. 125-2 at 6.

An affidavit submitted by Ingram, Hebert's mother, confirms his version of the events.  She attests as follows:

   4. Mr. Chaney informed me that a plea offer for fifteen (15) years was extended to Steven by the Government;

   5. Mr. Chaney informed me that with Steven's record he should accept the offered plea agreement or face the possibility of being exposed to more prison time;

   6. Mr. Chaney spoke to me for a long period of time explaining to me that he wanted me to convince Steven to take the offered plea;

   7. After speaking to Steven and him explaining to me how the Federal Sentencing Guidelines work Steven and I were convinced that he would receive more than the 15 years;

   8. After reiterating the conversation that Steven and I had to Mr. Chaney he informed me that the plea was to a specific amount of time, and if accepted by the judge, he would not be able to later on give Steven more time;

   9. Upon hearing this and meeting with Steven and his girlfriend, Shanda, to discuss this matter further and more in depth, it was collectively decided to accept the plea agreement; and,

   10. After Steven was sentenced to more than the agreed upon amount of time, Mr. Chaney informed me that he didn't know what happened and would later contact me about an appeal.[40]

Hebert's girlfriend, Shanda Duncan, also provided a sworn affidavit detailing the events leading up to Hebert's decision to accept the agreement.  She attests:

   3. Mr. Chaney informed me that he wanted me to speak with Steven and convince him to take the plea agreement that the Government had offered;

   4. When I asked Mr. Chaney about the details of the plea, he informed me that Steven would receive fifteen (15) years in

---

[40] *Id.* at 2.

place of being exposed to twenty (20) something years in the
event that he went to trial or took an open plea;

5. Mr. Chaney informed me that the offered plea was to a
specific time of 15 years incarceration;

. . .

7. I spoke to Mr. Chaney and agreed to go along with him and
Steven's mother to visit Steven to discuss the plea;

8. While we were all present the biggest concern was that
Steven would possibly receive more time and waive his rights
by pleading;

9. Mr. Chaney informed all of us that pursuant to the
particular plea agreement Steven would be basically already
sentenced at the plea hearing because the plea was under a
certain rule that did not allow the judge to go outside of
the agreed upon 15 years;

10. After assuring us all of such, Steven agreed to accept
the 15 year offer; and

11. After Steven was sentenced to more than the agreed upon
15 years, Mr. Chaney informed me that it would have to be
appealed.[41]

Hebert also argues that Chaney's remarks at sentencing
reveal that Chaney himself misunderstood the terms of the plea
agreement, further supporting his claim that Chaney mistakenly
guaranteed a sentence of 15 years. This argument is without
merit. In requesting a downward variance from the Sentencing
Guidelines to a sentence of 15 years, Chaney engaged in the
following dialogue with the Court, reflected in transcript of the
sentencing hearing as follows:

---

[41] *Id.* at 4.

Chaney:          [T]here was an 11(c)(1)(C) plea deal in place and the government agreed to this range of 180 was appropriate and asked --

The Court:       That's not what they agreed to.

Chaney:          It is, Your Honor.

The Court:       I went back and read that. That is not what it says. It says that they've agreed that a minimum of 180 to life --

Chaney:          Certainly, Your Honor.

The Court:       -- to life was the range.

Chaney:          Certainly, Your Honor.

The Court:       That says nothing -- I thought you all had agreement, and I went back and looked at it and I realized it was not nothing [sic]. It just says that they agree that the range is 180 months to life.

Chaney:          An appropriate range. What they're saying is that a sentence in that range is appropriate. And what I am saying to the Court is the Court has discretion to do that, to honor that, to give a sentence in that range. . . .

The Court:       I understand that.

Chaney:          And what we're saying is -- Your Honor, it says nothing, the -- the government didn't say that a 180 month sentence was the appropriate sentence. They said that a sentence in the range from 180 months at that low end of the range to something above that.

The Court:       To life.

22

Mr. Chaney:     Certainly, Your Honor. So, with respect
                to that, what we're saying is that this
                Court has discretion.[42]

Placed in the context of the entire sentencing hearing, the dialogue does not support the conclusion that Chaney misunderstood the terms of the plea agreement. Rather, it reflects Chaney's efforts to remind the Court that the plea agreement would permit a sentence below the guidelines range. Despite the somewhat awkward phrasing, Chaney was not incorrect in asserting that the Government had agreed that "a *range* of 180 was appropriate." In fact, the Government had agreed that a sentence of 180 months was within the acceptable range of sentences. Moreover, Chaney's objections to the PSR and his oral argument for a downward variance make it quite clear that he recognized the Court's discretion in fashioning an appropriate sentence.  Chaney would not have felt the need to argue for a variance if he believed that the Court was obligated to sentence Hebert to 15 years. Finally, Chaney stated under oath that he had made no representations to Hebert as to what sentence the Court would impose.

Although it is clear that Chaney understood the terms of the plea agreement at the time of sentencing, the allegations in Hebert's sworn declaration and the affidavits of his mother and girlfriend are sufficiently specific to constitute independent

---

[42] R. Doc. 116 at 14-15.

indicia of the possible merits of Hebert's claim, and an
evidentiary hearing is warranted.

In *United States v. Perez*, 227 F. App'x 357 (5th Cir. 2007)
(per curiam) (unpublished), the petitioner moved to vacate his
sentence on an ineffective assistance theory, arguing that his
attorney, Kenneth Smith, induced his guilty plea by promising him
a sentence of no more than 24 months.  In support of his claim,
he submitted a sworn declaration and the affidavits of his wife
and his wife's sister-in-law. *Id*. at 358. In his own declaration,
Perez alleged that Smith repeatedly told him that his sentence
would be 24 months and instructed him to deny in court that
anyone had promised him anything in return for his guilty plea.
*Id*. at 358-59. Perez's wife stated in her affidavit that she
personally visited with the attorney about ten times in his
office, and that during those conversations he repeatedly assured
her that her husband would receive a sentence of 24 months,
consisting of one year in jail, followed by one year of
probation. *Id.* at 359. Finally, the sister-in-law stated in her
affidavit that she was in the courtroom for sentencing, and that
she witnessed Smith tell another attorney that Perez would surely
receive a sentence of 24 months. *Id.*

The district court dismissed Perez's petition without
granting an evidentiary hearing because the affidavits failed to
provide the identity of an eyewitness to the alleged promise as

24

it was being made to Perez. *Id.; see Blackledge*, 431 U.S. at 73-74 (requiring proof of "(1) the exact terms of the alleged promise, (2) exactly when, where, and by whom the promise was made, and (3) the precise identity of an eyewitness to the promise."). The Fifth Circuit reversed, noting that the eyewitness requirement was "somewhat flexible."[43] *Id.* at 360 (citing *Hayes*, 699 F.2d at 202).  It stated:

> [N]either affiant claims to have witnessed a promise between Smith and Perez, but both claim to have seen Smith state unequivocally that he was going to get his client a sentence of 24 months. Juana Perez states that this promise was made directly to her, while Irene Rodriguez affirms that she witnessed Smith say the same thing to another attorney in the courtroom. Both witnesses were able to identify the time and place of these promises with adequate specificity.
>
> In ruling that the affidavits, even if true, could not satisfy the *Blackledge* requirements, the district court plainly misapplied our precedent. Perez was entitled to an evidentiary hearing at which he could try to demonstrate the validity of his own declaration and the two affidavits.

*Id.* Similarly, in *United States v. McCord*, 618 F.2d 389, 394-95 (5th Cir. 1980), the Fifth Circuit rejected the district court's conclusion that a petitioner's allegations of an unkept plea bargain were inconsequential *per se* simply because they were contradicted by his sworn testimony at the sentencing hearing. And in *Davis v. Butler*, 825 F.2d 892, 894-95 (5th Cir. 1987), the Fifth Circuit reversed the district court's denial of the petitioner's request for an evidentiary hearing, noting that his

---

[43] As with Hebert, Perez's sworn statements at rearraignment contradicted his claims regarding the alleged promise.  *Id.*

acknowledgment at re-arraignment that he had not been made "any promises at all," although a "formidable barrier," did not conclusively bar him from proving the existence of a promise. *See also United States v. Sanderson*, 595 F.2d 1021 (5th Cir. 1979) ("[I]n cases such as the present one, where the defendant offers specific factual allegations supported by the affidavit of a reliable third person, he is entitled to a hearing on his allegations."); *Dugan v. United States*, 521 F.2d 231, 233-34 (5th Cir. 1975) (noting that a transcript of the guilty plea hearing is insufficient to refute allegations of unkept promises when the defendant produces third-party affidavits supporting his claim).

Here, the affidavits, though bearing slight inconsistencies, detail the terms of the alleged promise and indicate when, where, and by whom the promise was made.  Moreover, unlike Perez, Hebert has a self-identified eyewitness, as his girlfriend's affidavit suggests that she and Hebert's mother were both present when Chaney made the promise to Hebert.  As the Fifth Circuit makes clear, Hebert's contrary statements at his re-arraignment are not dispositive evidence that he entered the plea knowingly and voluntarily.

With respect to the prejudice prong of Hebert's ineffective assistance claim, Hebert must demonstrate "a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial."

*United States v. Smith*, 844 F.2d 203, 209 (5th Cir. 1988) (quoting *Hill*, 474 U.S. at 59). A petitioner must do more than simply allege that he would have insisted on going to trial. "The test is objective; it turns on what a reasonable person in the defendant's shoes would do." *Id.* at 209. *See also Padilla v. Kentucky*, 559 U.S. 356, 372 (2010) ("[A] petitioner must convince the court that a decision to reject the plea bargain would have been rational under the circumstances."). In the Fifth Circuit, relevant factors include the strength of the evidence against the plaintiff, the benefit received under the terms of the agreement relative to the defendant's sentencing exposure should he have gone to trial, and the information made available to the defendant during the plea colloquy. *See, e.g., Smith*, 844 F.2d at 209; *United States v. Thompson*, 44 F.3d 1004, at *2 (5th Cir. 1995); *United States v. Williams*, 490 F. App'x 632, 633 (5th Cir. 2012); *United States v. Mackay*, 339 F. App'x 367, 368-69 (5th Cir. 2009).

In his declaration, Hebert states that he would not have accepted the plea agreement if he had been truthfully advised of its terms. Similarly, the affidavits of his mother and girlfriend allege that Hebert expressed reluctance to accept a plea offer that would expose him to the risk of more than fifteen years imprisonment. Though Hebert must do more than merely allege that he would have insisted on going to trial had he

understood the true terms of the agreement, the Government did not dispute Hebert's claim of prejudice in its opposition brief. Because the motion and the record before the Court do not "conclusively show that the prisoner is entitled to no relief," an evidentiary hearing is required.  The parties are directed to address both prongs of the standard articulated in *Strickland* and *Hill*, although the burden remains with Hebert to demonstrate his entitlement to relief. *Smith*, 844 F.2d at 208.

### C. *Fair Sentencing Act*

Congress enacted the Fair Sentencing Act ("FSA") on August 3, 2010. It altered the amount of crack cocaine that triggers the 5-year mandatory minimum sentence from 5 grams to 28 grams and altered the amount of crack cocaine that triggers the 10-year mandatory minimum sentence from 50 grams to 280 grams. 21 U.S.C. § 841. The Supreme Court held that "Congress intended the Fair Sentencing Act's more lenient penalties to apply to those offenders whose crimes preceded August 3, 2010, but who are sentenced after that date." *Dorsey v. United States,* 132 S.Ct. 2321, 2331 (2012).

At sentencing, defendant's counsel moved for the retroactive application of the FSA to his sentence.[44] The Court ruled that it was "unnecessary to resolve this matter because it would not

---

[44] R. Doc. 116 at 8.

affect sentencing."[45] For the second time, defendant now urges the Court to re-sentence him under the Fair Sentencing Act.

Hebert has waived his collateral challenge rights except to the extent that ineffective assistance of counsel affected the validity of his guilty plea or of his waiver of collateral challenge and appeal rights.  This claim does not fall within that limited category of challenges.  In any event, the Fair Sentencing Act has no bearing on Hebert's conviction for possession with intent to distribute 500 grams or more of cocaine hydrochloride, which would still carry a mandatory sentence of 10 years to life in prison, and which, based on his status as a career offender, would still result in an advisory guidelines range of 292-365 months imprisonment. Thus, while defendant's conduct and date of sentencing fall within the applicable range as interpreted by the United States Supreme Court in *Dorsey*, the FSA has no impact on the computation of defendant's sentence. Defendant's motion to apply the FSA retroactively is therefore denied.

## IV. CONCLUSION

For the foregoing reasons, the Court DISMISSES the count of Hebert's petition seeking re-sentencing under the Fair Sentencing Act. The Court takes Hebert's ineffective assistance claim under advisement pending further development of the record.

---

[45] Id.

IT IS FURTHER ORDERED that an evidentiary hearing is set to be held on **June 26, 2014, at 10:00 a.m.** before the district judge. The scope of the hearing shall be limited to whether Hebert's trial counsel's performance was constitutionally deficient due to false promises regarding the terms of the plea agreement, as well as whether Hebert was prejudiced as a result of any such deficiency. Hebert shall file a memorandum in support of his position, along with any supporting affidavits and other evidence, no later than June 5, 2014.  The Government shall file a responsive memorandum, along with any supporting affidavits or other evidence, no later than June 19, 2014.  If the parties wish to introduce live testimony at the hearing, they shall request leave of Court no later than June 19, 2014.

New Orleans, Louisiana, this __1st__ day of April, 2014.

SARAH S. VANCE

UNITED STATES DISTRICT JUDGE

30