UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

UNITED STATES OF AMERICA

VERSUS

STEVEN HEBERT

CRIMINAL ACTION

NO: 09-154

SECTION: R

ORDER AND REASONS

Before the Court is petitioner Steven Hebert's motion to vacate his guilty plea pursuant to 28 U.S.C. § 2255.[1] Petitioner contends that his plea was a consequence of the ineffective assistance of counsel, and therefore should be vacated. Because the Court finds that petitioner has failed to show that his guilty plea was the product of ineffective assistance of counsel, petitioner's motion is DENIED.

**I. BACKGROUND**

On February 18, 2010, the Government filed a superseding indictment charging Hebert with two counts of distributing narcotics, two counts of possession of narcotics with the intent to distribute, and two counts of unlawfully possessing firearms.[2] The

---

[1] The Fifth Circuit dismissed Hebert's direct appeal as frivolous.  R. Doc. 123.

[2] R. Doc. 30 (count one: knowingly and intentionally distributing 50 grams or more of cocaine base, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(a); count two: knowingly and intentionally distributing five grams or more of cocaine base, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B); count three: one count of

1

Government also filed a bill of information to establish that Hebert had four prior felony drug convictions.[3]

On the morning that his trial was to begin, Hebert entered into a plea agreement with the Government under Federal Rule of Criminal Procedure 11(c)(1)(C), in which Hebert agreed to plead guilty to Counts Three, Four, and Five of the indictment, and to the bill of information establishing Hebert's prior felony drug convictions.[4]   Under the agreement, the Government and Hebert agreed that "a specific sentencing range of not less than 15 years and maximum of life imprisonment is appropriate in the disposition of this case."[5] The Government also agreed to move to dismiss Counts One, Two, and Six of the indictment at sentencing.[6]   In exchange, and in addition to his guilty plea, Hebert waived his

---

knowingly and intentionally possessing with the intent to distribute 500 grams or more of cocaine hydrochloride, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B); count four: knowingly and intentionally possessing with the intent to distribute five grams or more of cocaine base, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B); count five: knowingly possessing two firearms after having been previously convicted of felony offenses in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2); and count six: knowingly possessing two firearms in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)).

[3] R. Doc. 91.

[4] R. Doc. 95.

[5] *Id.*

[6] *Id.*  If convicted of Count One, Hebert would have been exposed to a mandatory life sentence.  Additionally, if convicted of Count Six, Hebert's sentence guideline range would have been 360 months to life imprisonment.

right to appeal his conviction or sentence, except that he reserved the right to bring a direct appeal of any sentence above the statutory maximum.[7]   Hebert also waived his right to contest his conviction or sentence in any collateral proceeding, except by establishing that ineffective assistance of counsel directly affected the validity of his waiver of appeal rights and collateral challenge rights or the validity of the guilty plea itself.[8]

Hebert pleaded guilty to the bill of information establishing his prior felony drug convictions and to Counts Three, Four, and Five of the superseding indictment.[9]   At the rearraignment proceeding, the Court ensured that Hebert understood that by pleading guilty to the bill of information he admitted to having four prior felony drug convictions and that, if he had gone to trial without such an admission, the government would have had to prove his prior convictions beyond a reasonable doubt before his sentence could be enhanced because of the prior convictions.[10]   The Court then made sure that Hebert understood his maximum sentence exposure without a plea agreement affecting his sentence:

> The Court:   Based on your prior convictions for felony drug offenses, pursuant to 21 U.S.C. § 841(a)(1) and § 841(b)(1)(B),

---

[7] *Id.*

[8] *Id.*

[9] R. Doc. 103.

[10] *Id.* at 3.

> this [Third Count] carries a mandatory minimum sentence of 10 years imprisonment, a maximum possible sentence of life imprisonment . . . . [The Fourth Count] carries a mandatory minimum of ten years, and a maximum possible sentence of life imprisonment . . . . If the Court determines that you are an armed career offender pursuant to 18 U.S.C. § 924(e), meaning that you have at least three prior convictions for violent felony and/or serious drug offenses, then there is a 15-year mandatory minimum term of imprisonment and a maximum penalty of life imprisonment for this [Fifth Count].

> *        *        *

> The Court:        Do you understand that I could impose the maximum sentence I described to you this morning?

> Mr. Hebert:        Yes, ma'am.[11]

The Court then had the lawyers explain the plea agreement and confirmed that Hebert understood it:

> The Court:        Mr. Hebert, do you understand the plea agreement to be what the lawyers represented to me?

> Mr. Hebert:        Yes, ma'am.[12]

The Court specifically asked:

> The Court:        Do you understand that although the government has agreed that a specific sentencing range of not less than 15 years imprisonment and a maximum of life imprisonment is appropriate in this case that I'm not bound to accept that agreement?

---

[11] *Id.* at 7-9.

[12] *Id.* at 15-16.

Mr. Hebert:    Yes, ma'am.[13]

The Court then informed Hebert:

The Court:    I'm going to defer my decision whether to accept the plea agreement until I have an opportunity to review the presentence investigation report.  I'll advise you before sentencing if I accept the plea agreement.  If I decide not to accept the plea agreement, I will give you an opportunity to withdraw your guilty plea; but if you do not withdraw your guilty plea, I may dispose of your case in a manner less favorable to you than would have resulted under the agreement.  Do you understand that, sir?

Mr. Hebert:    Yes, ma'am.[14]

Hebert also assured the Court that no one promised or otherwise told him what specific sentence the Court would impose:

The Court:    Are there any agreements between you and the government concerning your plea other than what's in that agreement?

Mr. Hebert:    No, ma'am.

The Court:    Have you been persuaded to plead guilty because of any promises that are not in that agreement?

Mr. Hebert:    No, ma'am.

The Court:    Have you been influenced, induced, or persuaded to plead guilty because of any threats made to you by anyone?

Mr. Hebert:    No, ma'am.

*      *      *

---

[13] *Id.*

[14] *Id.* at 15-16, 19.

```
The Court:        Has anyone, including your lawyer, told
                  you what sentence I will impose . . . ?

Mr. Hebert:       No, ma'am.[15]
```

Finally, Mr. Chaney assured the Court that he had not made any representations to Hebert regarding what sentence the Court would impose:

```
The Court:        Have you made any representations to him
                  as to what sentence I will impose. . . ?

Mr. Chaney:       No, Your Honor.[16]
```

At the sentencing proceeding held on September 21, 2011, the Court computed the sentencing guideline range:

```
The Court:        The Court has consulted the United States
                  Sentencing Guidelines and determines that
                  the advisory sentencing range is as
                  follows.  You have a total offense level
                  of 35, a criminal history category of VI,
                  which indicates an advisory range of 292
                  to 365 months imprisonment . . . .
```

The Court then accepted the plea agreement:

```
THE COURT:        And also there was an agreement that the
                  specific sentencing range of not less
                  than 15 years imprisonment and a maximum
                  of life imprisonment is appropriate in
                  the disposition of this case.  The Court
                  accepts the Plea Agreement because it
                  adequately reflects the seriousness of
                  the offense and accepting the agreement
                  does not undermine the statutory purpose
                  of sentencing.[17]
```

---

[15] *Id.* at 14, 19.

[16] *Id.* at 20.

[17] R. Doc. 116 at 11.

Next, the Court heard arguments from counsel.  Hebert's counsel,
George Chaney, initially appeared to be confused regarding the
range enumerated in the plea agreement, but ultimately  urged the
Court to exercise its discretion and sentence Hebert to a 15-year
term:

> Mr. Chaney:     With respect to the negotiation of this,
> there was an 11(c)(1)(C) plea deal in
> place and the government agreed to this
> range of 180 was appropriate and asked--
>
> The Court:      That's not what they agreed to.
>
> Mr. Chaney:     It is, Your Honor.
>
> The Court:      I went back and read that.  That is not
> what it says.  It says that they've
> agreed that a minimum of 180 to life--
>
> Mr. Chaney:     Certainly, Your Honor
>
> The Court:      -- to life was the range.
>
> Mr. Chaney:     Certainly, Your Honor.
>
> The Court:      That says nothing -- I thought you all
> had agreement, and I went back and looked
> at it. . . .   It just says that they
> agree that the range is 180 months to
> life.
>
> Mr. Chaney:     An  appropriate  range.   What they're
> saying is that a *sentence in that range
> is appropriate*.  And what I am saying to
> the Court is *the Court has discretion to
> do  that,  to  honor  that,  to  give  a
> sentence in that range*.
>
> \*       \*       \*
>
> Mr. Chaney:     So we are asking this Court to *use its
> discretion* and to impose a sentence *at
> the low end of the agreed upon range in
> the 11(c)(1)(C) plea deal*, we're asking

the Court to impose a sentence of 15
years in this case.[18]

After hearing arguments from both sides, the Court sentenced Hebert
to 292 months as to Count Three, 292 months as to Count Four, and
100 months as to Count Five, all to run concurrently.[19]   The
sentence was within the range agreed to in the plea agreement, and
within the advisory guideline range.   The Court also granted the
Government's motion to dismiss the remaining counts of the
indictment.[20]

Although Hebert waived his right to appeal his conviction and
sentence, he reserved the right to challenge the validity of his
guilty plea on ineffective assistance of counsel grounds.   Thus,
Hebert now seeks to vacate his plea pursuant to 28 U.S.C. § 2255.
Hebert alleges that his attorney, George Chaney, falsely promised
Hebert that the plea agreement guaranteed a specific term of 15-
years imprisonment.   Hebert relies on the testimony of his fiancé,
Shanda Duncan, and his mother, Shula Ingram, to corroborate his
contention that Chaney induced Hebert's guilty plea through a false
promise of a guaranteed 15-year sentence.[21] The Court granted Hebert
an evidentiary hearing to resolve this matter.[22]

---

[18] *Id.* at 15-16, 18 (emphasis added).

[19] R. Doc. 116 at 22-23.

[20] *Id.* at 24.

[21] R. Doc. 125-2 at 2, 4.

[22] R. Doc. 131.

## II.  LEGAL STANDARD

## A.  Overview of 28 U.S.C. § 2255

Section 2255 of Title 28 of the United States Code provides that a federal prisoner serving a court-imposed sentence "may move the court which imposed the sentence to vacate, set aside or correct the sentence."  28 U.S.C. § 2255(a).  Only a narrow set of claims are cognizable in a section 2255 motion.  The statute identifies four bases on which a motion may be made: (1) the sentence was imposed in violation of the Constitution or laws of the United States; (2) the court was without jurisdiction to impose the sentence; (3) the sentence exceeds the statutory maximum sentence; or (4) the sentence is "otherwise subject to collateral attack."  *Id.*  A claim of error that is neither constitutional nor jurisdictional is not cognizable in a section 2255 proceeding unless the error constitutes "a fundamental defect which inherently results in a complete miscarriage of justice."  *United States v. Addonizio*, 442 U.S. 178, 185 (1979) (quoting *Hill v. United States*, 368 U.S. 424, 428 (1962)).

Ultimately, the petitioner bears the burden of establishing his claims of error by a preponderance of the evidence.  *Wright v. United States*, 624 F.2d 557, 558 (5th Cir. 1980).  For certain "structural" errors, relief follows automatically once the error is proved. *Brecht v. Abrahamson*, 507 U.S. 619, 629-30 (1993).  For other "trial" errors, the court may grant relief only if the error "had substantial and injurious effect or influence" in determining

the outcome of the case. *Id.* at 637-38; *see also United States v. Chavez*, 193 F.3d 375, 379 (5th Cir. 1999) (applying *Brecht's* harmless error standard in a section 2255 proceeding). If the court finds that the prisoner is entitled to relief, it "shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate." 28 U.S.C. § 2255(b).

Here, Hebert moves the Court pursuant to 28 U.S.C. § 2255(a) to vacate his guilty plea. Although Hebert waived his right to appeal from his conviction and sentence under 28 U.S.C. § 2255 in the plea agreement, he expressly reserved the right to bring a post conviction claim "if the defendant establishes that ineffective assistance of counsel directly affected the validity of . . . the guilty plea itself."[23] Thus, as a matter of agreement and law, Hebert has the right to contest the validity of his guilty plea on ineffective assistance of law grounds. *See United States v. White*, 307 F.3d 336, 343-44 (5th Cir. 2002).

## B. Ineffective Assistance of Counsel

To establish an ineffective assistance of counsel claim, a petitioner must show that counsel's performance fell below an objective standard of reasonableness and must further show a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been

---

[23] R. Doc. 95 at 2-3.

different.  *Strickland v. Washington*, 466 U.S. 668, 687 (1984). This two-prong analysis applies to challenges to guilty pleas on ineffective assistance of counsel grounds.  *Hill v. Lockhart*, 474 U.S. 52, 58 (1985).  If a court finds that a petitioner has failed to make a sufficient showing for either prong of the inquiry, the court may dispose of the claim.  *Strickland*, 466 U.S. at 697 ("If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed.").

With regard to the deficient performance prong, the Fifth Circuit has held that an attorney who misadvises his client of his true sentence exposure during plea negotiations has rendered deficient performance.  *See, e.g., United States v. Herrera*, 412 F.3d 577, 580-81 (5th Cir. 2005); *United States v. Grammas*, 376 F.3d  433, 437 (5th Cir. 2004).  Moreover, an attorney renders deficient performance in inducing a guilty plea by misrepresenting a defendant's sentence exposure.  *United States v. Perez*, 227 F. App'x 357, 359 (5th Cir. 2007) ("It is well-settled law that a guilty plea may be invalid if induced by defense counsel's unkept promises.").

The evidentiary burden on a petitioner is more onerous when a written plea agreement and statements in open court contradict an allegation of an unkept promise.  *See, e.g., United States v. Cervantes*, 132 F.3d 1106, 1110 (5th Cir. 1998) (citations omitted) ("Solemn declarations in open court carry a strong presumption of

11

verity, forming a formidable barrier in any subsequent collateral proceedings."); *United States v. Soliz*, 359 F. App'x 466, 470 (5th Cir. 2009) (per curiam)(citations omitted) ("[O]fficial documents, such as a written plea agreement, are entitled to a presumption of regularity and are accorded great evidentiary weight."). Nevertheless, a petitioner may demonstrate entitlement to relief on the basis of his attorney's alleged promises, though inconsistent with his representations in open court when entering his guilty plea, by proving: (1) the exact terms of the alleged promise; (2) exactly when, where, and by whom such promise was made; and (3) the precise identity of any eyewitness to the promise. *Cervantes*, 132 F.3d at 1110; *Smith v. Blackburn*, 785 F.2d 545, 548 (5th Cir. 1986); *Hayes v. Maggio*, 699 F.2d 198, 203 (5th Cir. 1983).

With respect to the prejudice prong of an ineffective assistance of counsel claim, a petitioner must demonstrate "a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *United States v. Smith*, 844 F.2d 203, 209 (5th Cir. 1988) (quoting *Hill*, 474 U.S. at 59). A petitioner must do more than simply allege that he would have insisted on going to trial. "The test is objective; it turns on what a reasonable person in the defendant's shoes would do." *Id.* at 209. *See also Padilla v. Kentucky*, 559 U.S. 356, 372 (2010) ("[A] petitioner must convince the court that a decision to reject the plea bargain would have been rational under the circumstances."). In the Fifth Circuit, relevant circumstances

include the strength of the evidence against the petitioner, the benefit received under the terms of the agreement relative to the petitioner's sentencing exposure should he have gone to trial, and the information made available to the petitioner during the plea colloquy. *See, e.g., Smith*, 844 F.2d at 209; *United States v. Thompson*, 44 F.3d 1004, at *2 (5th Cir. 1995); *United States v. Williams*, 490 F. App'x 632, 633 (5th Cir. 2012); *United States v. Mackay*, 339 F. App'x 367, 368-69 (5th Cir. 2009).

## III. ANALYSIS

Hebert asks the Court to revoke his guilty plea because his attorney, George Chaney, allegedly induced Hebert to plead guilty by falsely promising a fixed sentence of 15 years. This contention is directly contradicted by Hebert's sworn statements in open court and the express terms of the plea agreement itself,[24] and the Court finds Hebert's testimony at the Evidentiary Hearing unconvincing. *See Cervantes*, 132 F.3d at 1110. Thus, the Court finds that Hebert has failed to demonstrate that Chaney's performance fell below an objective standard of reasonableness. Nevertheless, even assuming that Chaney did misstate the terms of the plea agreement, the Court

---

[24] Both Mr. Hebert and George Chaney stated, under oath, that the plea agreement represented the entire agreement between Mr. Hebert and the Government and that there was no other promises made regarding the Court's sentence. R. Doc. 103 at 19-20.

also finds that Hebert has failed to demonstrate sufficient prejudice. *Strickland*, 466 U.S. at 697.

## A.   Deficient Performance

The first prong of the *Strickland* test requires Hebert to demonstrate that Chaney's performance fell below an objective standard of reasonableness. *Strickland*, 466 U.S. at 687. Hebert's allegation--that Chaney promised a specific term of 15 years--if true, would certainly constitute deficient performance. *See Perez*, 227 F. App'x at 359.  The Court finds, however, that Hebert has failed to provide this Court with any credible evidence to support his contention that Chaney made the alleged promise.

On August 26, 2014, the Court held an evidentiary hearing to determine whether Hebert's counsel, George Chaney, induced Hebert to plead guilty by promising Hebert a specific sentence of 15 years.  Hebert offered his own testimony as well as the testimony of his fiancé, Shanda Duncan, and his mother, Shula Ingram, in an attempt to establish that Chaney promised all three individuals that "[Hebert] would be basically already sentenced at the plea hearing because the plea was under a certain rule that did not allow the judge to go outside of the agreed upon 15 years."[25]  The Government offered the testimony of George Chaney, who denied ever making such a promise.

---

[25] R. Doc. 125-2 at 4.

14

As an initial matter, the Court finds Hebert's proffered evidence incredible in light of the signed plea agreement and Hebert's sworn statements during the plea colloquy.  The plea agreement unequivocally stated that the parties agreed that "a specific sentencing range of not less than 15 years and maximum of life imprisonment is appropriate in the disposition of this case."[26] Moreover, Hebert stated, under oath, that he was not induced to plead guilty by any external promises:

> The Court:      Have you been persuaded to plead guilty because of any promises that are not in that agreement?
>
> Mr. Hebert:    No, ma'am.[27]

Although not dispositive, the written plea agreement and Hebert's sworn statements "carry a strong presumption of verity, [and] form[] a formidable barrier in [this] subsequent collateral proceeding[]." *Cervantes*, 132 F.3d at 1110.

At the evidentiary hearing, Hebert offered his own testimony as well as that of his mother and fiancé.  Although Hebert and his fiancé claimed, in general terms, that Chaney promised a sentence of 15 years, their stories were inconsistent regarding the details. For example, Hebert's fiancé testified that Chaney made the alleged promise a few weeks before the trial, notwithstanding the fact that the plea agreement at issue was not reached until three days prior

---

[26] R. Doc. 95.

[27] R. Doc. 103 at 14.

to the trial date.  Hebert, on the other hand, vacillated between testifying that Chaney's promise was communicated to him through his mother and fiancé, and testifying that Chaney made the promise to Hebert in person the morning trial was to commence.  Even ignoring these inconsistencies, Hebert's mother directly contradicted the testimony of both Hebert and his fiancé.  Hebert's mother testified that Hebert, his mother, and his fiancé all knew that Hebert could receive a sentence greater than 15 years and acknowledged that they knew they "were taking a chance" by signing the plea agreement.  Hebert's mother further testified that it was Hebert himself who initially told her that there was a chance he could receive a longer sentence.

George Chaney also testified at the evidentiary hearing and stated, in no uncertain terms, that he never promised Hebert, Hebert's mother, or Hebert's fiancé a fixed sentence of 15 years. Chaney further testified that Hebert understood the sentencing guidelines and was adamant that Chaney file objections to the Presentence Investigation Report which called for an elevation of the sentencing range based on Hebert's prior drug convictions. Chaney also stated that Hebert conducted significant research on his own and understood that he faced a higher guideline range if the Court sentenced him as a career offender.

In conclusion, having observed the testimony and demeanor of the witnesses, the Court finds that Hebert and his fiancé lack

16

credibility.    Chaney  and  Hebert's  mother  provided  the  only internally consistent and plausible account of the events, and both Chaney and Hebert's mother testified that Hebert knew that the Court could impose a sentence anywhere between 15 years to life imprisonment.    Thus,  Hebert  has  failed  to  proffer  any  credible evidence to support his contention that Chaney induced his guilty plea  through  a  promise  of  a  specific  15-year  jail  sentence. Accordingly,  the  Court  finds  that  Hebert  has  failed  to  establish that Chaney rendered deficient performance in connection with his guilty plea.

### B.  Prejudice

To  prove  prejudice,  Hebert  must  demonstrate  "a  reasonable probability that, but for counsel's [false promise], he would not have  pleaded  guilty  and  would  have  insisted  on  going  to  trial." *Smith*, 844 F.2d at 209.   Hebert's bald assertions that he would have  insisted  on  going  to  trial  are  insufficient;  Hebert  "must convince the court that a decision to reject the plea bargain would have been rational under the circumstances." *Padilla*, 559 U.S. at 372.   Relevant  circumstances  include  the  strength  of  the  evidence against Hebert, the benefit he received under the plea agreement, and  the  information  the  Court  provided  Hebert  during  the  plea colloquy.  *Williams*, 490 F. App'x at 633.

As an initial matter, the Government's evidence against Hebert in this case was overwhelming.   Counts Three, Four, and Five of the

superseding indictment charged Hebert with possession with the
intent to distribute 500 grams of cocaine hydrochloride, possession
with the intent to distribute five grams or more of cocaine base,
and possession of firearms after having been previously convicted
of a felony offense, respectively.[28] As detailed in the Factual
Basis, the Government's evidence included a search of Hebert's
residence yielding 528 grams of cocaine hydrochloride, 26 grams of
cocaine base, approximately $178,000 in cash, and two handguns.[29]
Additionally, the Government was prepared to offer Hebert's
confession, in which Hebert admitted to his drug trafficking
activities.[30]  Indeed, George Chaney testified at the evidentiary
hearing that he repeatedly advised Hebert that there was little
chance of acquittal if Hebert proceeded to trial.  In light of all
of this evidence, Hebert cannot show a "reasonable probability"
that he would have insisted on going to trial.  *United States v.*
*Thompson*, 44 F.3d 1004, at *2 (5th Cir. 1995) (affirming denial of
motion to vacate sentence because "[t]he record reflects that a
large amount of damaging evidence existed against" the petitioner).

Second, Hebert received a considerable benefit under the plea
agreement.  Indeed, under the terms of the plea agreement, the

---

[28] R. Doc. 30.

[29] R. Doc. 94 at 2-4.

[30] *Id.* at 3.  The Court previously ruled that Hebert's confession
was admissible at trial.  R. Doc. 71.

Government agreed to the dismissal of half of the counts against Hebert, including Counts One and Six.[31]   Moreover, as Hebert concedes in his memorandum, conviction on Count One of the indictment, distributing 50 grams or more of cocaine base, would have exposed Hebert to a mandatory life sentence, which was not subject to discretionary reduction by the Court.[32]   Additionally, Count Six of the indictment, possession of firearms in furtherance of a drug trafficking crime, carried a sentencing guideline range of 360 months to life imprisonment.   Thus, the plea agreement spared Hebert from a sentence of life imprisonment upon conviction, and reduced the sentencing guideline range from 360 months to life to 292 to 365 months.   In light of the considerable benefit bestowed on Hebert by the plea agreement, the Court does not find Hebert's contention that he would have insisted on going to trial credible.   *Armstead v. Scott*, 37 F.3d 202, 210 (5th Cir. 1994) ("With the forty-year sentence under the plea bargain, [petitioner] might see his freedom again.   Under the two 99-year sentences, he would surely live out the rest of his days in prison.   In light of

---

[31] R. Doc. 95 at 1.

[32] R. Doc. 144 at 2.   Although a subsequent Supreme Court decision held that the Fair Sentencing Act's more favorable penalty provisions apply at the time of sentencing, *Dorsey v. United States*, 132 S.C 2321(2013), at the time he pleaded guilty, Hebert would have believed he faced mandatory life imprisonment on Count One as a result of his prior convictions.   *See United States v. Tickles*, 661 F.3d 212 (5th Cir. 2011).

these circumstances, [petitioner] has not established that but for [his attorney's] advice, he would have rejected the plea bargain.").

Finally, the Court went to great lengths during the plea colloquy and sentencing hearing to ensure that Hebert understood his sentencing exposure without a plea agreement as well as his exposure if the Court accepted the plea agreement. At the rearraignment proceeding, the Court repeatedly advised Hebert of the potential consequences of his plea, and Hebert consistently stated, under oath, that he understood. The Court also explained the consequences of admitting his four prior felony drug convictions and the effect of those prior convictions on his sentencing exposure.[33] The Court also ensured that Hebert understood the terms of the plea agreement, and that he understood that the Court was not bound to accept the plea agreement:

> The Court:    Mr. Hebert, do you understand the plea agreement to be what the lawyers represented to me?
>
> Mr. Hebert:   Yes, ma'am.
>
> The Court:    Do you understand that although the government has agreed that a specific sentencing range of not less than 15 years and a maximum of life imprisonment is appropriate in this case that I'm not bound to accept that agreement?

---

[33] *See supra* at n. 10.

20

Mr. Hebert:    Yes, ma'am.[34]

The Court additionally explained that it would allow Hebert to withdraw his guilty plea if the Court rejected the plea agreement.[35]

Finally, at the sentencing hearing the Court explained that even if it accepted the plea agreement, the sentence could range from 15 years to life imprisonment.[36]  The Court's admonishment at the sentencing hearing and Hebert's sworn statements in the plea colloquy acknowledging his sentencing exposure demonstrate that Hebert was not prejudiced by the alleged promises of his attorney. *See, e.g., United States v. Mackay*, 339 F. App'x 367, 368 (5th Cir. 2009) (affirming denial of motion to vacate because petitioner failed to establish prejudice as "he was admonished at rearraignment that sentence could be imposed from ten years to life imprisonment, and he responded negatively to the court's specific inquiry whether anyone had made promises to him as to the sentence that would be imposed"); *United States v. Green*, 220 F. App'x 346, 347-48 (5th Cir. 2007) ("[E]ven if [petitioner's] counsel did incorrectly inform him about his maximum term of imprisonment, [petitioner] was correctly informed about his maximum term of imprisonment both in his written plea agreement and at his plea hearing. . . . For the same reason, [petitioner] has not shown that

---

[34] *Id.* at 15-16.

[35] *Id.* at 19.

[36] R. Doc. 116 at 11, 15, and 16.

21

he was prejudiced by his counsel's actions, and thus has not shown that he received ineffective assistance of counsel concerning this issue.").

Having considered all of the circumstances, the Court finds that Hebert has failed to demonstrate that, but for his counsel's alleged promises, he would have rejected the plea agreement and insisted on going to trial.  *Smith*, 844 F.2d at 209.


**IV.  CONCLUSION**

Having considered the relevant circumstances, the Court finds that Hebert has failed to demonstrate that his guilty plea was a consequence of the ineffective assistance of counsel.  Accordingly, the Court DENIES Hebert's motion to vacate his plea.


New Orleans, Louisiana, this 6th day of November, 2014.


SARAH S. VANCE
UNITED STATES DISTRICT JUDGE